Ilslev, J.
The administrator of the succession of the late Robert Many, sues the defendant to recover from him as the endorser of the following described promissory notes, the several amounts thereof, with interest and costs:
1. A note for $452, payable on the 1-4 January, 1862.
2. Anote for $2,400, payable on Che end of March, 1862.
3. A note for $452, payable on the 1-4 January, 1863.
4. A note for $452, payable on Che 1-4 January, 1864.
5. A note for $5,650, payable on the 1-4 January, 1864.
*65 The demand is resisted by the defendant, who, besides pleading the general issue, denies all liability as the endorser of the notes declared on, for the following reasons, viz:
That the notes endorsed by him wore not x^’esented, and payment thereof demanded at the time and place, when and where they became due; that no diligence was shown by the plaintiff, or any previous holder of the said notes, in presenting them for payment, or in having them protested at the time and place of their respective maturity; that tho notes could and should have been protested. before tho period at which the plaintiff states that protest was made, viz: on the 26f7i July, 1865.
The Court below rendered judgment in favor of the plaintiff for tho amount of the two notes, 4 and 5, maturing in January, 1864, but dismissed his action for those which were payablein the years 1862 and 1868, aud from this judgment the defendant has appealed.
It is a settled rule of the commercial law, that a demand should bo made of the maker of a note on the very day on which by law it becomes due, and unless tho demand is so made it is generally a fatal objection to any right of recovery against the endorser, although the maker himself may, and will be liable on the note. This rule, although apparently harsh, and, x>erhaps, severe in its practical operation, yet is, for the general X>urpose of business, highly useful to the commercial community by introducing xrromptness, fidelity and exactness in the demand of payment. See Story.
There are, however, exceptions to tho rule: “Any inevitable accident or irresistible force, or unforeseen occurrence, which could not be provided against, will constitute a sufficient excuse for non-presentment, etc., at the maturity of the note.”
Such accident, irresistible force or unforeseen occurrence, must, however, be patent, real, positive, and, as a natural consequence; excuses derived from any such cause, vis mayor, as they arise with, and are dependent on, such cause must also disappear with it.
The special grounds relied on by the plaintiff to bring- him within the exception to the general rule in regard to the demand, etc., are:
1. The presence of political circumstances and civil war, amounting to a virtual interruption of all ordinary negotiations of trade and intercourse with the State of Louisiana and the parish of St. James.
2. The state of war between the Northern and Southern sections of the. United States.
8. The occui>ation of the State of Louisiana and the parish of St. ■lames by Confederate forces, which suspended commercial intercourse and access to said parish and State.
4. Public aud positive interdictions and prohibitions of the United States and blockades, which obstructed and suspended commercial intercourse with the said State and parish.
5. The absence of the late Robert Many from the State of Louisiana, and his sojourn, detention, illness, and death in the city of New York.
6. The absence of civil, judicial and ministerial officers, and the closing of their offices and of the Courts of justice in the parish of St. James.
7. Tho succession of Robert Many being unrepresented until the *66 appointment of the petitioner as administrator, and his qualification as such on the 26th July, 1865.
As regards the notes which matured in January of the year 1862 and 1863, we can perceive no reason why the judgment of the lower Court, in regard to them, should be disturbed; for, supposing that Robert Many had these notes with him on Ms arrival in New York, in June, 1861, there was from the time of the capture of New Orleans, by the United States army in April, 1862, open, free and uninterrupted communication by regular public conveyance between New York, New Orleans and the parish of St. James; and as all that part of Louisiana, in which are situated New Orleans and St. James, were then and continued to bo “ occupied and controlled by the forces of the United States,” etc., commercial intercourse between New York, New Orleans and St. James parish, was by the proclamation of the President of the United States of July 1st, 1861, not deemed unlawful, and did not become so until it was so declared by the proclamation of 31st March, 1863.
The office of recorder of the parish of St. James, was filled until tho 15th June, 1862. It was again in operation in December of that year, and was not afterwards vacated. There was then ample time to make demand of payment of the notes, which became due in January and March, 1862, and in January, 1863, as Robert Many died only on the 28th August, of 1863; retaining all his mental vigor until the time of his demise.
It was not necessary that the demand should have been made nor notice of demand and non-payment given by a notary. These requisites might have been performed and proved by any person lawfully in possession of the notes, and competent to testify as a witness. See Lathrop v. Lawson, 5 An. 238; 11 Rob. 454; 15 La. 552, and Burke v. McKay, 3 How. 71.
The two notes due in January and March, 1862, could not have been presented for payment to the drawer at. thé time and place of their respective maturity, but a demand should have been made, etc., as soon after as was practicable. Poihier Pokte du éóntrat dé óhange. Partie 1, chap. 5, g 144.
No valid excuse is shown for the non-performance of the requisites Of the law, as to demand and notice in regard to the notes, which fell due In 1863.
We concur, therefore, with the Judge of the District Court, that the holder of the notes, which matured in 1862 and 1863, by his negligence and want of diligence, has lost all recourse against the endorser of them.
The two notes payable in 1864, stands upon a different footing. It is true, they were not protested until many months after their maturity; but by the President’s proclamation of March 31, 1803, commercial intercourse was interdicted until the end of the rebellion, which was virtually suppressed in the month of May, 1865, by the surrender to the United States forces of the last of the Confederate armies.
■ Two months elapsed between that event and the date of the protest, and, under ordinary circumstances, that unnecessary delay would have been fatal; but, it seems that no administrator was appointed to the succession of Robert Many until the very day on which the protest was made. Under the commercial law, which in cases like this, is not ip conflict with. *67 the positive injunctions of our statutes, neither demand nor notice are required until a reasonable time after the appointment of an administrator. See Story on Promissory Notes, sec. 250, and Parsons on Bills and Notes, page 360.
No laches is imputed to the administrator, and as the endorser was duly and legally notified of the protest of the notes due in 1864, he is liable therefor.
For the reasons assigned by the Judge of the lower Court, and those now given by this Court •— %
It is ordered, adjudged and decreed, that the judgment of the District Court be affirmed, at the costs of the appellant.